# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| BUZZBALLZ, LLC | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| | § | CIVIL ACTION NO. 3:22-cv-1611 |
| V. | § | |
| | § | |
| BUZZ BALLS, INC. d/b/a BUZZBALLS | § | |
| and WILLIAM M. DORFMAN | § | |
| | § | |
| Defendants | § | |

## ORIGINAL COMPLAINT

Plaintiff BuzzBallz, LLC files this Original Complaint against Defendants Buzz Balls, Inc. d/b/a BuZZBalls and William M. Dorfman, and respectfully states as follows:

### I. PARTIES

1.   Plaintiff BuzzBallz, LLC ("BuzzBallz" or "Plaintiff") is a limited liability company duly organized under the laws of the State of Texas with its principal place of business at 2114 McDaniel Drive, Carrollton, Texas 75006.

2.   Defendant Buzz Balls, Inc. d/b/a BuZZBalls ("BuZZBalls") is a corporation doing business under the laws of the State of California with its principal place of business at 2080 Century Park E, Suite 1601, Los Angeles, California 90067.  BuZZBalls may be served through its registered agent, William M. Dorfman.

3.   William M. Dorfman ("Dorfman") is an individual residing at 1756 Clear View Drive, Beverly Hills, California 90210.

## II.  JURISDICTION AND VENUE

4.    This Court has subject matter jurisdiction pursuant to 28 USC §§ 1331 and 1338(a), (b) because this action involves claims of trademark infringement arising under federal law as well as related claims of unfair competition.

5.    This Court has personal jurisdiction over Defendants BuZZBalls and Dorfman (collectively "Defendants") because Defendants have committed acts which have reasonably foreseeable consequences in Texas, including operating an interactive website whereby Defendants can interact with Texas residents and sell and ship products into Texas. On information and belief, Defendants have marketed and sold products bearing the Infringing Marks to Texas residents in Texas.

6.    Venue is proper in this District pursuant to 28 USC § 1391(b) because a substantial part of the events or omissions giving rise to BuzzBallz's claims occurred in this district.  Venue is further proper in this district because BuZZBalls is subject to personal jurisdiction in this district and deemed to reside here.  *See* 28 U.S.C. § 1391(b)(1), (c).

## III.  FACTUAL ALLEGATIONS

### A.    BuzzBallz and Its Trademarks

7.    BuzzBallz is a woman-owned business that sells a variety of ready-to-serve cocktails in unique, rounded, colorful containers.

8.    The concept for BuzzBallz was conceived in the mid-2000's by its founder—at the time a high school teacher—who was looking for a convenient way to sip a cocktail on a hot summer day.  After years of industry research and a substantial financial investment, BuzzBallz was founded in 2009.

9.      Although BuzzBallz was founded and is based in North Texas, BuzzBallz has grown substantially since its founding, now selling products in all 50 states and internationally. BuzzBallz-branded beverages have become the number one ready-to-drink, single-serve cocktails in the United States.  BuzzBallz sells approximately 5 million cases (equating to approximately 120 million BuzzBallz beverages) annually, generating tens of millions of dollars in annual sales.

10.     BuzzBallz's products, which are sold in retail stores and online, including at www.buzzballz.com, consist of high-quality, pre-mixed cocktails made from natural juices and premium ingredients.

11.     BuzzBallz's cocktails come in a wide variety of flavors, and consist of BuzzBallz-branded Cocktails, Chillers, and Biggies, examples of which are shown below:



  

12.     Among its many offerings, BuzzBallz also markets and sells its popular naturally-caffeinated[1] BuzzBallz Espresso Martini cocktail and chiller:

 

13.     BuzzBallz has used its registered trademark, BUZZBALLZ, in association with the marketing and sale of its products since its founding in 2009.  BUZZBALLZ owns U.S. Trademark Registration No. 4,498,235 for its BUZZBALLZ mark, which mark has achieved incontestable status.  BuzzBallz also owns several other federal trademark registrations for its "BuzzBallz" marks, as shown in the chart below:

---

[1] BuzzBallz does not add caffeine extract to its beverages; rather, caffeine is a natural constituent of the real coffee contained in the BuzzBallz Espresso Martini beverages.

4

| Mark | U.S. Reg. No. | Reg. Date | First Use in Commerce |
|---|---|---|---|
| **BUZZBALLZ** | 4,498,225 | Mar. 18, 2014 | Oct. 1, 2009 |
| **BuzzBallz** | 3,865,524 | Oct. 29, 2010 | Oct. 1, 2009 |
| **BUZZBALLZ CHILLERS** | 4,810,280 | Sept. 8, 2015 | Apr. 28, 2015 |
| **BUZZBALLZ BIGGIES** | 5,237,465 | Jul. 4, 2017 | Jan. 20, 2017 |
| **BUZZBALLZ SHOOTERS** | 4,852,822 | Nov. 10, 2015 | Aug. 26, 2015 |
|  | 4,991,530 | Jul. 5, 2016 | Jul. 16, 2010 |
|  | 5,107,465 | Dec. 27, 2016 | Jul. 16, 2010 |
|  | 5,107,464 | Dec. 27, 2016 | Dec. 4, 2013 |

(collectively the "Registered BUZZBALLZ Marks").

14.    In addition to the Registered BUZZBALLZ Marks, BuzzBallz has numerous

pending trademark applications for "BuzzBallz" marks and, through years of hard work, has

established considerable common law trademark rights in an assortment of "BuzzBallz" marks (collectively, with the Registered BUZZBALLZ Marks, the "BUZZBALLZ Marks").

15.     BuzzBallz has continuously used the BUZZBALLZ Marks in association with its cocktail products, marketing materials, website located at www.buzzballz.com, social media pages, and merchandise offerings for more than a decade. BuzzBallz has developed considerable valuable goodwill and brand recognition in association with the BUZZBALLZ Marks throughout the United States, including in Texas and this District, where BuzzBallz is headquartered.  The consuming public thus has come to associate the BUZZBALLZ Marks with BuzzBallz's high-quality cocktails and product offerings.

16.     BuzzBallz has expended considerable amounts of time, labor, and money designing, developing, promoting, and protecting its rights in the BUZZBALLZ Marks.

**B.     Defendants' Infringement**

17.     Despite the nationwide consumer goodwill and brand recognition BuzzBallz has established in the BUZZBALLZ Marks through years of hard work and investment, in June of 2021—years after BuzzBallz began using the BUZZBALLZ Marks on a national scale—Defendants began marketing and selling products under the confusingly similar marks BUZZBALLS, BuZZBalls, Buzz Balls, Buzzballs, and variations thereof, including the singular tense (collectively the "Infringing Marks").

18.     Notably, the only difference between Defendants' Infringing Marks and the BUZZBALLZ Marks is the use of a "s" rather than a "z" at the end.  Phonetically, the marks are identical.

19.     Defendants' products marketed and sold under the Infringing Marks consist of caffeinated chewing gum sold in round containers bearing a similar color scheme to several of

BuzzBallz's products.  Examples of products Defendants market and sell using the Infringing Marks are shown below:

  

  

20.     Defendants' products not only feature the confusingly similar Infringing Marks, but also, like authentic BuzzBallz products, are sold in rounded containers and/or feature a rounded logo, as well as a similar color scheme to several of BuzzBallz's products, including pink, red, and green backgrounds with white lettering.

21.     Defendants' products featuring the Infringing Marks are also sold and marketed through similar channels of trade as authentic BuzzBallz products, including on the internet and social media.  And, on information and belief, Defendants' products are likely to be sold in grocery

stores, liquor stores, gas stations, and other retail stores where authentic BuzzBallz products are sold, further increasing the likelihood of consumer confusion.

22.    In an effort to further trade off of the BuzzBallz brand, Defendants have recently registered the domain name buzzballs.com (the "Infringing Domain Name") which is nearly identical to BuzzBallz's domain name buzzballz.com, which BuzzBallz has owned and used to market and sell its products for more than a decade.

23.    Recently, Defendants began marketing and selling products bearing the Infringing Marks through the Infringing Domain name at the website located at www.buzzballs.com, as shown below:



24.    Defendants' website contains a "Shop" page where consumers can purchase products bearing the Infringing Marks for delivery to any location in the United States, including Texas and this district:



25.    Defendants' website additionally contains a "Testimonials" page, featuring purported testimonials from consumers in numerous states, as well as one testimonial from a consumer in the United Kingdom.

26.    Defendants have extensively promoted their products containing the Infringing Marks on social media.  And Dorfman, who has 1.4 million Instagram followers, has also recently promoted the products on his personal Instagram page, located at www.instagram.com/drbilldorfman, resulting in thousands of likes.  One such post is shown below:



27.     Dorfman has additionally promoted products incorporating the Infringing Marks on at least two podcasts.  In fact, on the May 18, 2021 episode of "The Accidental Entrepreneur," which aired *prior* to the launch of Defendants' products bearing the Infringing Marks, Dorfman admitted that he was already aware of BuzzBallz and the preexisting BUZZBALLZ Marks, stating "Here's the crazy thing.  There's an alcoholic beverage called BuzzBallz."

28.     Further evidencing Defendants' intent to use the Infringing Marks on a national scale, Dorfman applied for and recently obtained U.S. Trademark Registration No. 6,701,869 for the Infringing Marks for the following categories of goods: "Caffeine preparations for stimulative use; Caffeine preparations for stimulative use in the form of chewing gum; Caffeine preparation for stimulative use in the form of candy; Caffeine preparation for stimulative use in cavity control; Caffeine preparation for stimulative use for fresh breath," which overlaps with BuzzBallz's

10

naturally-caffeinated offerings.  Dorfman's registration, which first issued on April 22, 2022, is contestable and subject to cancellation.

29.     Defendants' use of the Infringing Marks and Infringing Domain Name in connection with their advertising, offering, selling, and providing products in commerce throughout the United States that are marketed to similar consumers and in overlapping channels of trade as authentic BuzzBallz products is likely to mislead consumers as to the source of Defendants' goods and is likely to cause consumer confusion or mistake, or to deceive consumers into believing that Defendants' products are affiliated with, connected with, associated with, or endorsed by BuzzBallz when they are not.

30.     Defendants were well aware of BuzzBallz and the BUZZBALLZ Marks when they commenced their use of the Infringing Marks and Infringing Domain name.  This conclusion is informed by the following facts: (i) Dorfman admitted on a May 18, 2021 podcast that he was aware of "an alcoholic beverage called BuzzBallz"; (ii) BuzzBallz's widescale, continuous, nationwide use of the BUZZBALLZ marks predates Defendants' infringement by more than 10 years; (iii) a Google search for the Infringing Marks chosen by Defendants and variants thereof (e.g., "Buzz Balls," "Buzzballs," "buzzballs.com") returns numerous first-page hits featuring authentic BuzzBallz products; (iv) BuzzBallz has long owned numerous publicly-available federal trademark registrations for the BUZZBALLZ Marks; and (v) Dorfman, a dentist, is an experienced businessman and television personality whose name is associated with several businesses, trademark filings, and registered trademarks. It is therefore inconceivable that Defendants were unaware of BuzzBallz's exclusive rights in the BUZZBALLZ Marks—which a simple Google search *of the Infringing Marks* would reveal—when they commenced their infringement.

Nevertheless, Defendants decided to move forward with marketing and selling their products using the Infringing Marks and Infringing Domain Name.

31.    As a consequence of Defendants' ongoing infringement of the BUZZBALLZ Marks and unauthorized use of the confusingly similar Infringing Marks and Infringing Domain Name, BuzzBallz has suffered and will continue to suffer irreparable harm, the exact nature, extent, and amount of which cannot be ascertained at this time. Therefore, in addition to damages, BuzzBallz is also entitled to preliminary and permanent injunctive relief.

## IV.    CAUSES OF ACTION

### Count One: Trademark Infringement, 15 U.S.C. § 1114

32.    BuzzBallz reincorporates by reference the allegations in the foregoing paragraphs, inclusive, as if the same were set out here in full.

33.    BuzzBallz owns the Registered BUZZBALLZ Marks.

34.    BuzzBallz has continuously used the Registered BUZZBALLZ Marks in commerce and has established considerable brand recognition and goodwill with respect to the Registered BUZZBALLZ Marks.

35.    Defendants have and continue to use in commerce reproductions, counterfeits, copies, and colorable imitations of the Registered BUZZBALLZ Marks in connection with the sale, offering for sale, and distribution of goods, including caffeinated chewing gum, which use is likely to cause consumer confusion, mistake, and deception in violation of 15 U.S.C. § 1114.

36.    BuzzBallz has been damaged and is likely to continue to be damaged by Defendants' infringement of the Registered BUZZBALLZ Marks, and BuzzBallz seeks and is entitled to recover its actual damages, Defendants' profits from the infringement, and the costs of this action pursuant to 15 U.S.C. § 1117(a).

37.     This case is exceptional in light of Defendants' willful use of the Infringing Marks to sell and offer to sell their products throughout the United States despite BuzzBallz's widespread and continuous use of the Registered BUZZBALLZ Marks for several years preceding Defendants' first use of the Infringing Marks. Because this case is exceptional, BuzzBallz is also entitled to recover its attorneys' fees incurred pursuing this action pursuant to 15 U.S.C. § 1117(a).

38.     Defendants' activities have caused and, unless enjoined, will continue to cause irreparable injury to BuzzBallz and the goodwill BuzzBallz has established in its products, brand, and the Registered BUZZBALLZ Marks over the years.

### *Count Two: False Designation of Origin, 15 U.S.C. § 1125(a)*

39.     BuzzBallz reincorporates by reference the allegations in the foregoing paragraphs, inclusive, as if the same were set out here in full.

40.     BuzzBallz has established considerable rights in the BUZZBALLZ Marks through continuous use of the BUZZBALLZ Marks in commerce in association with its beverages and merchandise.

41.     Defendants have sold, offered to sell, and distributed products throughout the United States displaying the Infringing Marks, including through use of Defendants' website located at www.buzzballs.com, through which Defendants market and sell caffeinated chewing gum using the Infringing Marks.

42.     Defendants' unauthorized use of the Infringing Marks is likely to cause confusion, to cause mistake, and to deceive as to the affiliation, connection, and association of Defendants with BuzzBallz, BuzzBallz's products, and as to the origin, sponsorship, or approval of Defendants' products by BuzzBallz in violation of 15 U.S.C. § 1125(a)(1)(A).

13

43.     BuzzBallz has no control over the nature or quality of the products sold and offered for sale by Defendants.  Any failure, neglect, or default of Defendants in providing quality goods to consumers will reflect adversely upon BuzzBallz as the perceived source of origin and/or approval of the products, and may also have potential to harm the consuming public.

44.     Defendants' activities have caused and, unless enjoined, will continue to cause irreparable injury to BuzzBallz and the goodwill BuzzBallz has established in its products, brand, and the BUZZBALLZ Marks over the years.

45.     BuzzBallz has suffered and will continue to suffer substantial damage to its brand, reputation, and goodwill, and BuzzBallz seeks and is entitled to recover actual damages, Defendants' profits from the infringement, and the costs of this action pursuant to 15 U.S.C. § 1117(a).

46.     Defendants' conduct constitutes an "exceptional" case under 15 U.S.C. § 1117(a), and BuzzBallz is entitled to recover its attorneys' fees incurred pursuing this action.

### *Count Three: Trademark Dilution, 15 U.S.C. § 1125(c)*

47.     BuzzBallz reincorporates by reference the allegations in the foregoing paragraphs, inclusive, as if the same were set out here in full.

48.     BuzzBallz is the exclusive owner of the BUZZBALLZ Marks.

49.     The BUZZBALLZ Marks are distinctive and famous within the meaning of the Federal Trademark Dilution Act, 15 U.S.C. § 1125(c).  The BUZZBALLZ Marks are widely recognized by the general consuming public of the United States as the designation of the source of BuzzBallz's goods.

50.     Defendants commenced use of the Infringing Marks after the BUZZBALLZ Marks became famous.

51.     Defendants' marketing, distribution, and sale, without authorization from BuzzBallz, of products bearing the Infringing Marks, is diluting the distinctive quality of the BUZZBALLZ Marks and decreasing the capacity of the BUZZBALLZ Marks to identify and distinguish BuzzBallz's products.

52.     Defendants' activities, as alleged herein, both separately and collectively, have diluted or are likely to dilute the distinctive quality of the BUZZBALLZ Marks in violation of the Federal Trademark Dilution Act, 15 U.S.C. § 1125(c).

53.     At all times, on information and belief Defendants willfully intended to trade on BuzzBallz's reputation and/or to cause dilution of the famous BUZZBALLZ Marks.

54.     BuzzBallz seeks and is entitled to recover injunctive relief, actual damages, Defendants' profits from the infringement, and the costs of this action pursuant to 15 U.S.C. § 1117(a).

55.     Defendants' conduct constitutes an "exceptional" case under 15 U.S.C. § 1117(a), and BuzzBallz is entitled to recover its attorneys' fees incurred pursuing this action.

### *Count Four: Cybersquatting, 15 U.S.C. § 1125(d)*

56.     BuzzBallz reincorporates by reference the allegations in the foregoing paragraphs, inclusive, as if the same were set out here in full.

57.     Defendants have registered, trafficked in, and used the Infringing Domain Name, which is phonetically identical and confusingly similar to the BUZZBALLZ Marks and the BuzzBallz domain name www.buzzballz.com, with a bad faith intent to profit from BuzzBallz's trademark rights in violation of 15 U.S.C. § 1125(d).

58.     As a result of Defendants' actions, BuzzBallz has been damaged.

59.     Pursuant to 15 U.S.C. § 1125(d)(1)(C), BuzzBallz requests that the Court order the transfer of the Infringing Domain Name to BuzzBallz or, alternatively, the forfeiture and/or cancellation of Defendants' registration of the Infringing Domain Name.

60.     BuzzBallz has suffered and will continue to suffer substantial damage to its brand, reputation, and goodwill, and BuzzBallz seeks and is entitled to recover its actual damages, Defendants' profits from the infringement, and the costs of this action pursuant to 15 U.S.C. § 1117(a).

61.     Defendants' conduct constitutes an "exceptional" case under 15 U.S.C. § 1117(a), and BuzzBallz is entitled to attorneys' fees incurred pursuing this action.

### *Count Five: Cancellation of Federal Trademark Registration—15 U.S.C. § 1119*

62.     BuzzBallz reincorporates by reference the allegations in the foregoing paragraphs, inclusive, as if the same were set out here in full.

63.     Dorfman applied for and obtained U.S. Trademark Registration No. 6,701,869  for the infringing mark BUZZBALLS.  Dorfman filed his application to register the mark long after BuzzBallz began using the BUZZBALLZ Marks throughout the United States and obtained federal registrations for the Registered BUZZBALLZ Marks.

64.     The registration for Dorfman's infringing mark BUZZBALLS was granted less than five years ago—in fact, less than five months ago.  Dorfman's registration of the Infringing Marks has caused and, if allowed to continue, will continue to cause damage to BuzzBallz. Dorfman was not entitled to obtain a registration for the infringing mark BUZZBALLS due to the Infringing Marks's close resemblance, visually and phonetically, to the BUZZBALLZ Marks.  The continuing existence of Dorfman's registration for the infringing mark BUZZBALLS is likely to cause confusion, mistake, and deception, and to falsely suggest to the consuming public that there

is a connection between Defendants and BuzzBallz, and suggest that Defendants own rights to the Infringing Marks when they do not.

65.     Accordingly, BuzzBallz requests an order from the Court pursuant to 15 U.S.C. § 1119 cancelling U.S. Trademark Registration No. 6,701,869   for the infringing mark BUZZBALLS.  BuzzBallz further requests that a certification be sent to the Director of the United States Patent and Trademark Office ("USPTO") instructing the Director to make appropriate entries in the USPTO's records to effectuate the cancellation of the registration.

### *Count Six: Common Law Trademark Infringement*

66.     BuzzBallz reincorporates by reference the allegations in the foregoing paragraphs, inclusive, as if the same were set out here in full.

67.     BuzzBallz has been using the BUZZBALLZ Marks throughout the United States continuously for several years in association with its beverage products, including naturally-caffeinated beverages, and merchandise.

68.     Without authorization, Defendants recently began using the Infringing Marks and Infringing Domain Name in connection with their caffeinated chewing gum products.

69.     Defendants' use of the Infringing Marks and Infringing Domain Name, or any confusingly similar variations thereof, is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendants' goods are created, manufactured, or distributed by BuzzBallz, or are associated or connected with BuzzBallz, or have the sponsorship, endorsement, or approval of BuzzBallz, when they do not.

70.     Defendants' actions demonstrate a willful intent to trade on the goodwill associated with the BUZZBALLZ Marks.

71.     As such, Defendants' activities are causing and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public, and, additionally, injury to BuzzBallz's goodwill and reputation, for which BuzzBallz has no adequate remedy at law.   Furthermore, BuzzBallz has suffered and will continue to suffer substantial damages while Defendants have reaped substantial profits.

72.     BuzzBallz is entitled to injunctive relief and to recover Defendants' profits, as well as Defendants' actual damages and costs and fees incurred in connection with this action, in an amount to be determined at trial.

### *Count Seven: Unfair Competition/Misappropriation*

73.     BuzzBallz reincorporates by reference the allegations in the foregoing paragraphs, inclusive, as if the same were set out here in full.

74.     BuzzBallz developed the BUZZBALLZ Marks through the expenditure of extensive time, skill, labor and money.   In connection with the marketing and sale of their goods bearing the Infringing Marks, including through use of the Infringing Domain Name, Defendants have exploited the reputation and goodwill associated with the BUZZBALLZ Marks in competition with BuzzBallz to gain a competitive advantage.

75.     By these actions, Defendants have gained a financial benefit for themselves and have caused harm to BuzzBallz's brand, goodwill, and reputation, causing BuzzBallz to suffer damages.

76.     BuzzBallz is entitled to injunctive relief and to recover Defendants' profits, as well as Defendants' actual damages and costs and fees incurred in connection with this action, in an amount to be determined at trial.

*Count Eight: Dilution under Texas Law, Tex. Bus. & Comm. Code § 16.103*

77.     BuzzBallz reincorporates by reference the allegations in the foregoing paragraphs, inclusive, as if the same were set out here in full.

78.     BuzzBallz is the exclusive owner of the BUZZBALLZ Marks.

79.     The BUZZBALLZ Marks are distinctive and famous within the meaning of Texas Business and Commerce Code § 16.001, *et seq.*  The BUZZBALLZ Marks are widely recognized by the general consuming public of the State of Texas, and in geographic areas within the State of Texas, as the designation of the source of BuzzBallz's good.

80.     Defendants commenced use of the Infringing Marks after the BUZZBALLZ Marks became famous.

81.     Defendants' marketing, distribution, and sale, without authorization from BuzzBallz, of products bearing the Infringing Marks, is diluting the distinctive quality of the BUZZBALLZ Marks and decreasing the capacity of the BUZZBALLZ Marks to identify and distinguish BuzzBallz's products.

82.     Defendants' activities, as alleged herein, both separately and collectively, have diluted or are likely to dilute the distinctive quality of the BUZZBALLZ Marks in violation of the Texas Business and Commerce Code § 16.103.

83.     At all times, on information and belief, Defendants willfully intended to trade on BuzzBallz's reputation and/or to cause dilution of the famous BUZZBALLZ Marks.

84.     BuzzBallz seeks and is entitled to recover injunctive relief and, because Defendants' acted willfully, an amount up to three times BuzzBallz's actual damages and Defendants' profits from the infringement, the costs of this action, and BuzzBallz' attorneys' fees

incurred pursuing this action pursuant to Texas Business and Commerce Code §§ 16.103(c), 16.104.

## V.   REQUEST FOR INJUNCTIVE RELIEF

85.   BuzzBallz reincorporates by reference the allegations in the foregoing paragraphs, inclusive, as if the same were set out here in full.

86.   Defendants have violated 15 U.S.C. §§ 1114, 1125(a), (d), committed common law trademark infringement, and unfairly competed with BuzzBallz under Texas law, and BuzzBallz is therefore entitled to injunctive relief under 15 U.S.C. § 1116 and under Texas law.

87.   BuzzBallz requests that the Court issue preliminary and permanent injunctive relief enjoining Defendants and their officers, directors, agents, employees, successors, assigns and attorneys, and all other persons and entities in active concert or participation with Defendants who receive notice of the injunction, from doing, aiding, causing or abetting the following:

(a)   engaging in any acts or activities directly or indirectly calculated to trade upon the BUZZBALLZ Marks or BuzzBallz's reputation and goodwill, including any further use of the Infringing Marks, Infringing Domain Name, or any other marks that are identical or confusingly similar to the BUZZBALLZ Marks in any physical or electronic medium, including, but not limited to product packaging, websites, Internet metadata, domain names, business names, assumed business names, apparel, accessories, letterhead, social media sites, podcasts, and other written, audio, or visual materials of any nature;

(b)   directly or indirectly using in commerce a reproduction, counterfeit, copy, or colorable imitation of the BUZZBALLZ Marks or packaging in connection with the sale, offering for sale, or distribution, of any goods and/or services;

(c)     directly or indirectly using any false designation of origin, false or misleading description of fact, or false or misleading representation of fact in connection with the sale of Defendants' products or services, including any express or implied representation that Defendants' are affiliated with BuzzBallz;

(d)     passing off, inducing or enabling others to sell or pass off, as products or services produced by or for or distributed with authorization of BuzzBallz, any product or service that is not the product or service of BuzzBallz, is not produced under the control or supervision of BuzzBallz, is not approved by BuzzBallz, or is not distributed with BuzzBallz's express authorization;

(e)     Selling, offering to sell, or distributing products that incorporate, include, or display the Infringing Marks, or any other mark that is confusingly similar to the BuzzBallz Marks; and

(f)     otherwise engaging in competition unfairly.

88.    BuzzBallz will suffer immediate and irreparable damage, injury and harm for which there is no adequate remedy at law if Defendants are not immediately and permanently enjoined from the conduct listed above.

89.    Public policy favors the protection of intellectual property rights and the prevention of unfair competition, and any injunctive relief granted herein will therefore be in accordance with public policy.

90.    The potential damage to BuzzBallz if the injunctive relief requested herein is not granted far outweighs any harm that Defendants will suffer as a result of the injunctive relief requested.  Immediate and permanent injunctive relief is therefore appropriate.

## VI.  **JURY DEMAND**

91.     BuzzBallz hereby demands a trial by jury of all claims so triable.

## VII.  **PRAYER FOR RELIEF**

WHEREFORE, BuzzBallz prays that the Court grant the following relief:

1.      Order that Defendants and their officers, directors, agents, employees, successors, assigns and attorneys, and all persons and entities in active concert or participation with Defendants who receive notice of the injunction, be enjoined and restrained preliminarily during the pendency of this action, and then permanently, from doing, aiding, causing, or abetting any of the following:

(a)     engaging in any acts or activities directly or indirectly calculated to trade upon the BUZZBALLZ Marks or BuzzBallz's reputation and goodwill, including any further use of the Infringing Marks, Infringing Domain Name, or any other marks that are identical or confusingly similar to the BUZZBALLZ Marks in any physical or electronic medium, including, but not limited to product packaging, websites, Internet metadata, domain names, business names, assumed business names, apparel, accessories, letterhead, social media sites, podcasts, and other written, audio, or visual materials of any nature;

(b)     directly or indirectly using in commerce a reproduction, counterfeit, copy, or colorable imitation of the BUZZBALLZ Marks or packaging in connection with the sale, offering for sale, or distribution of any goods and/or services;

(c)     directly or indirectly using any false designation of origin, false or misleading description of fact, or false or misleading representation of fact in connection with

the sale of Defendants' products or services, including any express or implied representation that Defendants' are affiliated with BuzzBallz;

(d)     passing off, inducing or enabling others to sell or pass off, as products or services produced by or for or distributed with authorization of BuzzBallz, any product or service that is not the product or service of BuzzBallz, is not produced under the control or supervision of BuzzBallz, is not approved by BuzzBallz, or is not distributed with BuzzBallz's express authorization;

(e)     Selling, offering to sell, or distributing products that incorporate, include, or display the Infringing Marks, or any other mark that is confusingly similar to the BuzzBallz Marks; and

(f)     otherwise engaging in competition unfairly.

2.     Order Defendants to file with the Court and serve upon counsel for BuzzBallz within thirty (30) days after the entry of the injunction prayed for in this Complaint, a written report, sworn to under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction;

3.     Order the cancellation Dorfman's Registration No. 6,701,869 for the Infringing Marks and send an appropriate certification to the Director of the USPTO to effectuate the cancellation;

4.     Pursuant to 15 U.S.C. § 1125(d)(1)(C), order Defendants to transfer the registration of the Infringing Domain Name to BuzzBallz or, alternatively, order the forfeiture or cancellation of the Infringing Domain Name.

5.     Award BuzzBallz its actual damages, which may be trebled in the Court's discretion, resulting from Defendants' infringement;

6.      Order Defendants to account for and pay to BuzzBallz all profits derived by reason of Defendants' acts alleged in this Complaint, which may be trebled in the Court's discretion, and to disgorge such profits to BuzzBallz;

7.      Find that this is an "exceptional" case pursuant to 15 U.S.C. § 1117;

8.      Award BuzzBallz its costs of suit, including reasonable and necessary attorneys' fees and expenses pursuant to 15 U.S.C. § 1117;

9.      Award BuzzBallz pre-judgment and post-judgment interest at the highest legal rate on all sums awarded in the Court's judgment; and

10.     Award BuzzBallz such other and further relief to which it may be entitled at law or in equity.


Respectfully submitted,

HAYNES AND BOONE, L.L.P.

/s/ *Jason P. Bloom*
Jason P. Bloom
jason.bloom@haynesboone.com
State Bar No. 24045511
One Victory Park
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Telephone: (214) 651-5000
Facsimile: (214) 651-5940

Michael J. Lambert
michael.lambert@haynesboone.com
State Bar No. 24128020
600 Congress Avenue, Suite 1300
Austin, Texas 78701
Telephone: (512) 867-8400
Facsimile: (512) 867-8470

**ATTORNEYS FOR PLAINTIFF
BUZZBALLZ, LLC**